### THE JOHN R. PENROSE v. THE WILLIAM J. LIPSETT.

(District Court, E. D. Pennsylvania. June 28, 1897.)

COLLISION IN CHANNEL—SAIL GETTING UNDER WAY.

A schooner going down Delaware Bay under sail, and colliding with another schooner, which, having been anchored on the west side of the channel, heading northeast, was getting under way, paying off southward to go to sea, *held* solely in fault, in that, being bound to keep out of the way, she attempted to pass to the east across the other's bow, when it was uncertain how far east the latter would go in making the turn, instead of taking the safe course to the westward, under her stern.

This was a libel in rem in behalf of the owners of the schooner John R. Penrose against the schooner William J. Lipsett to recover damages resulting from a collision between the two vessels in Delaware Bay.

The following questions were submitted to Capt. Jarvis Call:

(1) Are you a member of the board of survey in admiralty at the port of Philadelphia?

(2) How much experience have you had as a master of sailing vessels?

(3) Supposing the situation of the Penrose to have been such as her officers described in their testimony, could she have come about southward conveniently, within less space than she covered in doing so? If she could, state about how much less.

(4) Could the Lipsett have safely turned westward at the time she shifted eastward and thus have avoided the threatened danger?

Jarvis Call, master, will please read the testimony of the officers above named and answer the foregoing questions in writing.          Wm. Butler, J.

June 22, 1897.

To the Honorable William Butler, Judge of the District Court of the United States for the Eastern District of Pennsylvania:

A. 1. I am a member of the board of surveyors in admiralty at the port of Philadelphia.

A. 2. I have been master of sailing vessels for thirty years.

A. 3. After carefully considering the positions of the Penrose and the state of the tide and wind at the time, it would be difficult to say just what distance it would take to wear said vessel around. Under favorable circumstances where there was no tide, and in smooth water she ought to go around in three or four times her length when the anchor is off the bottom.

In a strong tideway it is not an unfrequent occurrence for a vessel to fall off until she gets the tide on her beam and stops, still continuing to forge ahead. I have known instances of vessels in a strong tideway to go for miles before paying off, the vessel being under the influence of the tide and not her helm.

A. 4. Considering all the circumstances, the state of the tide, the direction of the wind, the management of the helm and sails of the Penrose, it is my judgment that she did everything practicable to wear around as soon as possible. The state of the tide did not aid her, striking her side it tended to stop her from falling off. She was more under its influence than of her helm and would thus be retarded in getting around.

It is my opinion that a vessel getting under way has the right of way, while a vessel under way with all sail set is under control and can luff to, or keep off as the case may require. The Lipsett even at a mile distance might easily have changed her course westward and gone under the stern of the Penrose. A change of one or two points would have been sufficient. In her condition she ought to have had complete control of her movements.

(Signed) Jarvis Call.

Philadelphia, June 24th, 1897.

Horace L. Cheyney and John F. Lewis, for libelant.

Curtis Tilton, for respondent.

BUTLER, District Judge. When the vessels came within view they were from three to five miles apart. The libelant was down the bay, on the western side of the channel, getting under way from her anchorage, heading northeast, and paying off southward, to go to sea. The respondent was above, coming down near midchannel, and understood the libelant's intention to turn southward. She kept her course until more than half the distance between the vessels had been traversed, and then apprehending danger, turned eastward, as far as existing circumstances permitted—which was only about two points. As she thus endeavored to cross the Penrose's bows, the vessels came into collision slightly. The injury sustained by the Penrose, for which she sues, was small.

On the hearing I was impressed with a belief that the Lipsett should have gone westward when she turned the other way, or earlier. It seemed dangerous to attempt to cross the Penrose's bow, and entirely safe to go under her stern. Further examination has satisfied me that this impression was right. It was the duty of the Lipsett to keep out of the way. She could not know how far east the Penrose would go, under the circumstances, and she should therefore have turned the other way in time to avoid danger, as she might easily have done. She was not justified in believing her course, originally or as changed, safe, because she was not justified in supposing the Penrose would turn earlier than she did. The only serious question in my mind, after such fuller examination, was whether the Penrose was not also at fault in going so far east. While her officers testify that she turned as rapidly as she conveniently could; that they fully recognized the duty of doing so and endeavored to perform it, witnesses called by the respondent testify that she could have turned earlier. The question thus presented involves consideration of the effect of the existing state of wind and tide, and of the management of helm and sails. Such a question can only be wisely dealt with by an experienced navigator; the theorizing and guessing of a landsman, no matter how intelligent, and whether lawyer or layman, is of no value. Under the circumstances I deemed it proper, therefore, to take the judgment of a master seaman who has had long experience in the navigation of sailing vessels. The answers of Capt. Call are annexed hereto. They support the testimony of the Penrose's officers; and consequently I find that this vessel turned as rapidly as she conveniently could, and was not therefore in fault.

The libel must be sustained and a decree may be prepared accordingly.